**United States Court of Appeals**
**for the Eighth Circuit**

NATIONAL STONE, SAND AND GRAVEL
ASSOCIATION, ET AL.,
    *Petitioners*,

v.

MINE SAFETY & HEALTH
ADMINISTRATION, ET AL.,
    *Respondents*.

No. 24-2661

---

**EMERGENCY MOTION FOR ADMINISTRATIVE STAY**
**AND EXPEDITED BRIEFING**

---

Petitioners National Stone, Stand & Gravel Association, *et al.*, have just filed

a motion ("Stay Motion") seeking a stay of the Silica Rule under review in this case,

30 C.F.R. § 60.1 *et seq.* In connection with that stay request, petitioners move this

Court, pursuant to the All Writs Act, 28 U.S.C. § 1651, and Federal Rules of

Appellate Procedure 18 and 27, to issue a temporary administrative stay of the Silica

Rule pending the Court's decision on the Stay Motion, and to order expedited

briefing of the Stay Motion. The grounds for this emergency request are as follows:

    1.    Respondent ("MSHA") published the Silica Rule nearly a year ago.

89 Fed. Reg. 28,218 (Apr. 18, 2024). The Rule lowers the permissible exposure

level ("PEL") for respirable crystalline silica in mines to 50 $\mu g/m^3$. But more than

simply changing the PEL, MSHA prohibited mine operators from using important

1

compliance methods to comply with the PEL, including certain controls (*e.g.*, job rotation and respirators) that MSHA knew were needed to feasibly achieve the new, lower standard. Simultaneously, MSHA insisted that any single measurement of silica exposure one iota above the PEL constitutes a violation, 30 C.F.R. § 60.10, even though it is well known that the pertinent measurement methods have uncertainties and potential errors that are comparable in magnitude to the PEL itself. Further, MSHA mandated across-the-board medical examinations for new miners, regardless of silica exposure, and requires certain medical information to be sent to a government agency to build a new government database of miners' medical information. Finally, the rule covers sorptive clays, a category of minerals that was excluded from the silica standard issued by MSHA's sister agency, the Occupational Safety and Health Administration. Petitioner Sorptive Minerals Institute ("SMI") has challenged MSHA's coverage of sorptive clays in the consolidated case as an arbitrary and capricious decision because of the discrepancy between OSHA and MSHA and because MSHA does not have legal authority to apply its silica standard to this type of mineral.

2.    Petitioners timely sought judicial review through a petition filed in the U.S. Court of Appeals for the Fifth Circuit. *Nat'l Stone, Sand & Gravel Ass'n v. MSHA*, No. 24-60306, Doc. 1-2 (5th Cir. June 14, 2024). Their petition was eventually transferred to this Court pursuant to 28 U.S.C. § 2112, because another

2

petitioner, SMI, had filed an earlier petition here.

3.      Compliance with the Silica Rule is required for coal mines beginning on April 14, 2025.  That date is just two weeks from now.  (For other mines, termed "metal/non-metal," compliance is due in April 2026.)

4.      Petitioners did not seek a stay of the rule at the outset of the case, because given the time of filing their petition, it was likely that the proceedings could be nearly finished by this time.

5.      Instead, the litigation has been substantially delayed.  At the outset, disputes between SMI and MSHA about where challenges to the Rule should be litigated consumed almost the whole summer.  SMI moved for voluntary dismissal of its petition, and the Court granted that dismissal; MSHA moved for reconsideration of the dismissal; and, after protracted discussions, SMI, MSHA, and petitioners stipulated that the case would proceed in this Court.  By the beginning of September, there was not even a briefing schedule in place.

6.      The schedule to which the parties ultimately agreed would have had briefing finished by the beginning of February.  Doc. 5435287.  However, intervening events extended the briefing schedule farther into the future.  First, SMI moved on October 24, 2024 for an initial extension of deadlines based on medical emergencies, Doc. 5449880, with the result that MSHA's answer brief deadline was extended to January 17, 2025—just days before the change in administrations,

3

Doc. 5451148. Then, on March 17, 2025, SMI moved for an extension of the reply brief deadlines from March 21, 2025 to April 21, 2025 to give the new administration space to consider the issues involved in this and other matters from the prior administration, Doc. 5496469, which the Court granted, Doc. 5496648.

7.      As the April 14 compliance deadline has approached, petitioners have repeatedly asked MSHA about whether MSHA would stay the compliance deadline itself; or whether it would consent to a court-issued stay, as would be sensible in the circumstances; or whether it would oppose such temporary relief. Multiple attorneys representing MSHA have departed, leaving MSHA unresponsive, for stretches of time, to confer about even the simplest scheduling matters in the case. After the January 20, 2025 inauguration of the new President and the resulting departure of senior leadership at MSHA and the Department of Labor, respondent has been without an Administrator (a state of affairs that continues as of this filing). Petitioners have continued to make this outreach for two months now. As of this filing, MSHA has not articulated a position on the motion for a stay.

8.      The impending deadline is generating extreme costs for coal mining operators as they do their best to come into compliance, despite the challenges caused by the Rule's restrictions on compliance methods. These companies will incur additional and substantial costs once compliance is required upon April 14. Moreover, coal mine operators will face continual, ongoing risk of being held in

Appellate Case: 24-2661     Page: 4     Date Filed: 04/02/2025 Entry ID: 5502801

violation even if they are actually in compliance. This risk arises because MSHA's Rule treats a single measurement even one iota above the PEL as being a violation, 30 C.F.R. § 60.10, even though the available measurement tools have such uncertainties and errors that a single measurement can easily report the concentration of silica as being 51 µg/m$^3$ when it is actually, say, 24 µg/m$^3$. *See* Pet. Br. 12, 40, 44-48.

9.     Meanwhile, in the past MSHA staff have hosted District Coal Operator's Stakeholder Calls (essentially, MSHA-run teleconferences to assist company compliance) during which MSHA staff have articulated interpretations of the Rule that make compliance even more challenging, the costs higher, and the risks of noncompliance greater.

10.    The costs of compliance are unrecoverable. Multiple courts, including the U.S. Supreme Court, have recognized that "the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." *Airlines for Am. v. Dep't of Transp.*, 110 F.4th 672, 677 (5th Cir. 2024) (staying a Federal Aviation Administration regulation)*; Ohio v. EPA*, 603 U.S. 279, 291-92 (2024) (ordering an Environmental Protection Agency rule must be stayed in light of substantial nonrecoverable compliance costs and likelihood of success in the challenge to the rule). Petitioners' stay motion provides greater detail on the irreparable harm that will result absent a stay.

5

11.   Petitioners have also shown a strong likelihood of success on the merits of their case, as set forth in the opening brief and in the stay motion.

12.   Appellate courts can, and routinely do, issue administrative stays during short periods for deliberation on longer-term stay motions.  For example, the Supreme Court, "[a]fter receiving an emergency application, … frequently issues an administrative stay to permit time for briefing and deliberation."  *United States v. Texas*, 144 S. Ct. 797, 798 (Mem.) (Mar. 19, 2024) (Barrett, J., concurring in the denial of application to vacate stay).  "The courts of appeals use the procedure to the same end," *id.*, and this Court has done so among them.  *E.g.*, *Brady v. Nat'l Football League*, 638 F.3d 1004 (8th Cir. 2011) (unpublished order); *Miller v. Thurston*, No. 20-2095, 2020 WL 3240600 (8th Cir. June 15, 2020) (granting administrative stay and setting expedited briefing on motion for a full stay).  "The purpose of this administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal."  *Brady*, 638 F.3d at 1005.  Accordingly, "[a]dministrative stays do not typically reflect the court's consideration of the merits of the stay application."  *United States v. Texas*, 144 S. Ct. at 798.

13.   "[A]n administrative stay … is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits."  *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019) (unpublished order granting administrative stay).  Consequently, "[c]ourts issuing administrative

6

stays do not routinely undertake the full-fledged four-factor inquiry." Rachel Bayefsky, *Administrative Stays: Power and Procedure*, 97 NOTRE DAME L. REV. 1941, 1953 (2022); *see also*, *e.g.*, *Nat'l Urban League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020) ("When considering the request for an administrative stay, our touchstone is the need to preserve the status quo. We defer weighing the *Nken* factors until the motion for stay pending appeal is considered."); *United States v. Eaton Corp.*, No. 24-2732, 2024 WL 4513277, at *1 (6th Cir. Sept. 3, 2024) (unpublished order) ("[T]he 'touchstone' of this analysis is whether an administrative stay is 'need[ed] to preserve the status quo.'") (second alteration in original).

14.     An administrative stay would preserve the status quo here. At present, mining operators must comply with standards that generally limit silica exposures to 100 $\mu g/m^3$. 89 Fed. Reg. at 28,218; Gov't Br. 8 (MSHA agreeing with this characterization of existing rules). MSHA's existing regulations allow operators to rotate miners in and out of exposure areas to limit their exposure, Pet. Br. 19; and MSHA's existing regulations for coal mines account for uncertainties and errors in sampling rather than treating each sample that is numerically above the PEL as constituting a violation, 30 C.F.R. § 70.207(e). These things will change on April 14 for coal mines. Upon that date, a coal mine that has a single measurement of silica exposure above 50 $\mu g/m^3$ will be in violation of MSHA's standard, even though

7

mining operators must change their practices and operations to achieve the more stringent PEL.

15.    In accordance with this Court's past practice, petitioners respectfully request that the Court issue a temporary administrative stay of the Silica Rule's compliance deadline for coal mines, which is imminent on April 14, 2025. That temporary administrative stay will ensure that coal mining operators are not at risk of violations stemming from a rule that is so deeply flawed. Those flaws, as laid out in petitioners' Opening Brief and the Stay Motion, include: (1) failing to adhere to the Mine Act and ignoring evidence of infeasibility when MSHA prohibited mine operators from rotating miners to comply with the PEL; (2) failing to rationally and consistently explain MSHA's break from prior practice when it prohibited the use of respirators to comply with the PEL; (3) concluding without evidence that the new Rule is feasible when MSHA had no evidence that any mine consistently achieved the PEL for all its miners—and discounted evidence that mines struggle to meet the PEL even *with* compliance methods the Rule would forbid; (4) irrationally deviating from MSHA's proposed rule by eliminating the option to use objective data in place of constant air sampling because objective data is too "subjective"; (5) failing to align the Rule's medical examination requirements with the plain text of the Mine Act; and (6) failing to follow notice and comment procedures for mandating a new government database of miner health information.

8

16. Petitioners also request an expedited briefing schedule on the Stay Motion, in order to give the Court the earliest opportunity to decide the Stay Motion on its merits. Expedited briefing will cause MSHA no prejudice; MSHA has had two months to anticipate that petitioners would seek a stay of the Rule. The ordinary deadline for a response to the Stay Motion would be 10 days after its filing today, thus April 12, 2025. Fed. R. App. P. 27(a)(3). Petitioners propose that the Court require a response, if any, by Tuesday, April 8, and a reply from petitioners, if any, by Wednesday, April 9.

17. Finally, petitioners respectfully request a further-expedited briefing schedule for this Emergency Motion seeking an administrative stay. Given the temporary character of an administrative stay and its function to preserve the status quo, and given the short time left before the compliance deadline, briefing about the administrative stay should be swift. In *Missouri v. Trump*, the government filed its response on the same day as the motion for an administrative stay. No. 24-2332, Doc. 5413114 (8th Cir. July 12, 2024). Petitioners propose that MSHA respond by the end of Thursday, April 3, 2025; petitioners' reply should be required by 2 p.m. Central Time the day after MSHA's response.

For these reasons, petitioners request that the Court:

- issue an administrative stay of the April 14, 2025 compliance deadline in the

Appellate Case: 24-2661     Page: 9     Date Filed: 04/02/2025 Entry ID: 5502801

Silica Rule, pending the Court's decision on the Stay motion;

- order expedited briefing of the Stay Motion, with MSHA's response to the Stay Motion due on Tuesday, April 8, 2025, and petitioners' reply due on Wednesday, April 9, 2025; and

- order highly expedited briefing on this emergency motion for an expedited administrative stay, with MSHA's response to this emergency motion due on Thursday, April 3, 2025, and petitioners' reply due by 2 p.m. Central Time on Friday, April 4, 2025.

April 2, 2025                                      Respectfully submitted,

                                                  */s/ Keith Bradley*
                                                  KEITH BRADLEY
                                                  PETER S. GOULD
                                                  KAYLA MARIE MENDEZ
                                                  717 17th Street, Suite 1825
                                                  Denver, CO 80202
                                                  T: (303) 830-1776
                                                  F: (303) 894-9239
                                                  keith.bradley@squirepb.com
                                                  peter.gould@squirepb.com
                                                  kayla.mendez@squirepb.com

                                                  MORGAN MILLER
                                                  2550 M Street NW
                                                  Washington, DC 20037
                                                  morgan.miller@squirepb.com

TREVOR PIROUZ KEHRER
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
trevor.kehrer@squirepb.com

SQUIRE PATTON BOGGS (US) LLP

*Counsel for National Stone, Sand &*
*Gravel Association, et al.*

11

## CERTIFICATE OF COMPLIANCE

In compliance with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,150 words, as determined by the word-count function of Microsoft Office 365.

In compliance with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), counsel prepared this document in 14-point Times New Roman font using Microsoft Office 365.

*/s/ Keith Bradley*
Keith Bradley

Appellate Case: 24-2661    Page: 12    Date Filed: 04/02/2025 Entry ID: 5502801

**CERTIFICATE OF SERVICE**

I certify that on April 2, 2025, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system.  All parties are represented by counsel who are registered CM/ECF users.

/s/ Keith Bradley
Keith Bradley

13
