# United States Court of Appeals
# for the Eighth Circuit

| | |
|---|---|
| NATIONAL STONE, SAND AND GRAVEL ASSOCIATION, ET AL.,<br>*Petitioners*,<br><br>v.<br><br>MINE SAFETY & HEALTH ADMINISTRATION, ET AL.,<br>*Respondents*. | No. 24-2661 |

## REPLY IN SUPPORT OF MOTION FOR STAY

MSHA does not counter petitioners' request for a stay. Doc. 5505028, p.2 ("Stay Response"). Formally, MSHA "takes no position," *id.*; but given that MSHA had the opportunity to oppose a stay and provide any reasons it thinks a stay is unwarranted, that absence of a position should not be read as opposition. Further, MSHA does not dispute the merits of the Stay Motion. Petitioners showed the irreparable harm they face, and likelihood of success on the merits, and that the other stay factors also favor a stay. Doc. 5502800, pp.5-22 ("Stay Mot."). MSHA does not contest any of those assertions. *See* Stay Response 1-5. Petitioners articulated their compliance with Rule 18. Stay Mot. 4-5. MSHA does not deny that a formal motion for a stay at the agency would have been impracticable, nor that petitioners also complied with Rule 18 by informally requesting a stay. *See* Stay Response 1-5.

1

Accordingly, the Court should grant the Stay Motion, and stay the April 14, 2025 and April 8, 2026 compliance deadlines in the Silica Rule, as petitioners requested. Petitioners submit this reply to clarify that MSHA's "enforcement pause" does not decrease the need for a stay by the Court.

## I. MSHA DOES NOT CONTEST THE STAY MOTION'S MERITS.

MSHA does not deny that this Court has authority, as petitioners showed, to stay the compliance deadlines in the Silica Rule (the rule under review). Stay Mot. 2-4; *see* Stay Response 1-5. Nor does MSHA contest that all four traditional factors set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009), favor petitioners.

To briefly sum up the merits of the Stay Motion: Petitioners have a high likelihood of success because the Silica Rule is fatally deficient on at least six independent grounds (recounted in both petitioners' Opening Brief and the Stay Motion). Irreparable harm will result without this Court's intervention. Millions of dollars in unrecoverable compliance costs, unquantifiable declines in efficiency, and significant loss of business opportunities hang in the balance across the Nation's entire mining industry, and most immediately at coal mines. These injuries are irreparable harm justifying a stay. *See BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). MSHA provides no arguments or evidence to the contrary.

Meanwhile, MSHA's decision to remain silent on the Stay Motion both

signals that MSHA perceives no harm from a stay pending judicial review and suggests that the public interest favors the requested stay. A stay pending judicial review is therefore fully justified.

## II. MSHA'S "VOLUNTARY ENFORCEMENT PAUSE" DOES NOT OBVIATE THE NEED FOR A STAY.

MSHA observes there are "various issues affecting enforcement of the Silica Rule," Stay Response 3, necessitating MSHA's announcement two days ago implementing a "Voluntary Enforcement Pause," Stay Response Ex. A ("Enforcement Pause Notice" or "Notice"). The Enforcement Pause Notice does not prevent the harms that petitioners detailed in the Stay Motion, does not extend through judicial review, and does not reduce the need for a stay of the compliance deadlines pending judicial appeal.

*First*, MSHA states that it can "rescind[] or modif[y] [the Notice] in the Department's complete discretion." Enforcement Pause Notice 1. Thus, MSHA has expressly warned petitioners, and the Court, that MSHA could reverse course and begin enforcement on April 15, 2025, or any point thereafter. If the Court denies the Stay Motion, MSHA could rescind its Enforcement Pause the next day. In other words, the Enforcement Pause Notice is at most a voluntary, temporary pause on enforcement for just four months—not a stay of the Silica Rule or its compliance deadlines pending judicial review. It does not change the analysis supporting a stay pending judicial review.

3

Courts frequently conclude that such temporary and voluntary pauses do not alter the availability of relief. When dealing with mootness, for example, this Court has held that "a defendant's voluntary cessation of a challenged practice" does not moot a case, *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006), because "[o]therwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends," *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). In cases of "prosecutorial indecision" like the one at bar, an agency defendant must "demonstrate 'that it is absolutely clear the wrongful behavior could not reasonably be expected to recur'" to show mootness and avoid an adverse decision. *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022) (citation omitted). The analysis should be similar for avoiding a judicial stay.

Far from showing petitioners and their members will not be at risk, MSHA has said explicitly that it can end the Enforcement Pause at any time, in its "complete discretion." Enforcement Pause Notice 1. So, the Enforcement Pause should be no justification for refusing petitioners the judicial protection they seek. *Cf. Sherman*, 451 F.3d at 503 ("a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") (citation omitted).

***Second***, even if MSHA does not rescind or modify the Enforcement Pause

Notice, by its terms it runs for just four months. That is not enough time for this Court to resolve this litigation, especially considering Reply Briefs have not been filed and oral argument has not even been scheduled.

*Third*, the Enforcement Pause Notice says nothing about whether MSHA will forgo retroactive enforcement for violations that might occur during those four months. That is, the announcement does not say that any violations that take place after April 14, 2025 but before the pause ends on August 18, 2025 will or will not incur enforcement activity later. The Notice merely "temporarily pause[s] *enforcement* of the requirements" "until August 18, 2025." *Id.* (emphasis added). Enforcement is an activity that MSHA undertakes, so evidently the Notice is informing the public that MSHA will not engage in that activity during these four months. But if in month five, MSHA undertakes enforcement activity arising from events occurring during the Pause, and a mine operator objects—relying on the Enforcement Pause Notice—the Notice seems to bar that objection. It "may not be relied upon to, create any rights, substantive or procedural, enforceable at law by any party in any matter." Enforcement Pause Notice 1.

*Fourth*, the Notice does not purport to pause the obligation to comply with the Silica Rule. It states expressly that in the Notice, MSHA "does not create or remove any rights or duties." *Id.* Evidently the duties of a mine operator under the Silica Rule remain in place, so compliance activities must continue. Moreover, as a

5

practical matter, compliance efforts must continue unabated, given the risks that (1) a violation could result in enforcement after the four months; and (2) MSHA stated it could end the Pause at any time (including short of four months). Moreover, a stated purpose of the Pause is "to provide time for operators to secure necessary equipment and otherwise come into compliance." *Id*. So MSHA fully expects and intends that mine operators will continue their compliance efforts.

Suppose an operator pauses or delays the expenditures and the alteration of mining and business operations it was undertaking to attempt compliance with the Silica Rule. That operator might find that on, say, May 5, MSHA announces the end of the Enforcement Pause, with as little notice as the issuance of the Pause itself. A complex operation like a mine cannot change significant aspects of its operations on a day's notice, so this hypothetical operator would be placing itself at great risk. (And, as noted above, MSHA's Notice does not suggest operators can or should pause compliance; instead, the Notice says it does not "remove any rights or duties.") Consequently, the irreparable harms from commitment of significant financial resources and effort to come into compliance, with the resulting loss of efficiency and business opportunities, remains the same with or without the Enforcement Pause.

Suppose an operator continues its compliance efforts, but a sample on April 18 measures a silica exposure of 51 μg/m$^3$. As petitioners have explained, a

single measurement like that does not necessarily mean any miner was actually exposed to silica above the 50-µg/m$^3$ PEL; but the single measurement does, under the Rule, constitute a violation. Stay Mot. 10 & n.7; Doc. 5467902, pp.12, 40, 44-48. MSHA might revoke the Pause on the same day as the single excessive sample, or MSHA might undertake enforcement action in late August based on the hypothetical sample from April 18. Thus, this hypothetical operator remains at risk of enforcement penalties, the same with or without the Enforcement Pause.

In short, that MSHA has decided to "pause enforcement" does not alter the irreparable harms that petitioners and their members face. Petitioners need the Court to block those harms by issuing the requested stay of the Rule's compliance deadlines.

## III. MSHA'S REFUSAL TO PROVIDE A POSITION RENDERED FURTHER ATTEMPTS IMPRACTICABLE.

MSHA's one point of departure from the Stay Motion is that MSHA "disagrees … that any part of DOL has been non-responsive." Stay Response 4. The basis for that disagreement is that, MSHA says, "[p]etitioners and DOL have been in constant contact," and that "DOL advised Petitioners of the Secretary's intended enforcement pause *before* Petitioners filed their Emergency Motion." *Id.* at 4-5.

The "constant contact" involved, primarily, petitioners' repeated requests for a stay or for MSHA's position on petitioners' plan to move for a stay. Stay Mot. 2.

7

While MSHA now takes no position on petitioners' request to judicially stay the compliance deadlines, MSHA did not respond to petitioners' inquiry for two months. Indeed, even the statement that MSHA "takes no position," Stay Response 5, is information that MSHA did not provide until this Court required a response yesterday evening.

It is true that MSHA told petitioners it would be issuing an enforcement pause before they filed the Stay Motion—in fact, it was several hours before they filed. Petitioners had asked for months about a stay, and asked what MSHA's position would be on a stay. Petitioners told MSHA they needed to know by Monday, March 31, to have time for a motion before the April 14 compliance deadline. MSHA asked for more time, and then on Wednesday, April 2, in the early evening told petitioners that MSHA would be announcing a four-month enforcement pause. And still MSHA did not articulate any position (or even that it "takes no position") about the stay that petitioners had asked for. Then MSHA did not actually issue the Enforcement Pause Notice for another week after that, on April 8.

To be clear, petitioners greatly appreciate that MSHA is alert to the problems with enforcement of the Silica Rule, and that MSHA has responded flexibly to those problems. The Enforcement Pause is good policy, and petitioners welcome it. But petitioners made two points about MSHA's failure to respond about a stay. First, petitioners have complied with Rule 18 because the non-response shows that a

8

formal motion would have been impracticable. The contacts that MSHA describes do not undermine that conclusion. Second, emergency relief (in the form of an administrative stay) is warranted notwithstanding the fact that petitioners filed the Stay Motion just two weeks before the April 14 compliance deadline. That delay was caused by petitioners' diligent, but unsuccessful, efforts to obtain a response from MSHA about a stay. The contacts that MSHA describes do not contradict that observation.

## CONCLUSION

For the reasons provided above, in the Stay Motion, and in petitioners' Opening Brief, the Court should stay the Silica Rule's compliance deadlines (April 14, 2025, and April 8, 2026) for the duration of this case. MSHA has provided no opposition to that request.

April 10, 2025                                              Respectfully submitted,

*/s/ Keith Bradley*
KEITH BRADLEY
PETER S. GOULD
KAYLA MARIE MENDEZ
717 17th Street, Suite 1825
Denver, CO 80202
T: (303) 830-1776
F: (303) 894-9239
keith.bradley@squirepb.com
peter.gould@squirepb.com
kayla.mendez@squirepb.com

MORGAN MILLER
2550 M Street NW
Washington, DC 20037
morgan.miller@squirepb.com

TREVOR PIROUZ KEHRER
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
trevor.kehrer@squirepb.com

SQUIRE PATTON BOGGS (US) LLP

*Counsel for National Stone, Sand & Gravel Association, et al.*

# CERTIFICATE OF COMPLIANCE

In compliance with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 1,969 words, as determined by the word-count function of Microsoft Office 365.

In compliance with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), counsel prepared this document in 14-point Times New Roman font using Microsoft Office 365.

*/s/ Keith Bradley*
Keith Bradley

**CERTIFICATE OF SERVICE**

I certify that on April 10, 2025, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. All parties are represented by counsel who are registered CM/ECF users.

*/s/ Keith Bradley*
Keith Bradley